UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

J<small>OEVIAIR</small> K<small>ENNEDY</small>,

        Petitioner,        Case No. 1:20-cv-716

v.        Honorable Paul L. Maloney

G<small>REGORY</small> S<small>KIPPER</small>,

        Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

**I.        Factual allegations**

Petitioner Joeviair Kennedy is incarcerated with the Michigan Department of Corrections at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan.  On June 14, 2018, following a five-day jury trial in the Kalamazoo County Circuit Court, Petitioner was convicted of armed robbery, in violation of Mich. Comp. Laws § 750.529, and use of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b.  Petitioner's jury acquitted him of first-degree and second-degree murder and a second felony-firearm charge.  (Mich. Ct. App. Op., ECF No. 1-1, PageID.39.)  On July 16, 2018, the court sentenced Petitioner to a prison term of 17 years, 6 months to 40 years, for armed robbery, to be served consecutively to a sentence of 2 years for felony-firearm.

The Michigan Court of Appeals described the underlying facts as follows:

> Jacob Jones was a student at Western Michigan University and lived off campus. On December 8, 2016, while Jones was playing video games with several friends, Jordan Waire[2] and defendant broke into his apartment.  Brandishing a gun and wearing a red bandana, Waire demanded money, marijuana, and other belongings from everyone in the room.  According to one witness, Jones "put his hands up in a motion of, you know, surrendering" and repeated that they would give the men anything they wanted.  Waire pistol-whipped Jones and then shot him in the face. During the robbery, defendant "was standing in a position in which it made it look as though he had a firearm concealed."  He showed no expression.  In addition to defendant's posturing, Waire announced that defendant, too, was armed.  As Waire began to search the apartment for additional items, he turned and said to defendant, "if anybody moves blast them."  Defendant "nodded in agreement."  Fearing for their lives, Jones's friends decided to act.  One friend "stood up and tackled the individual with the gun" while another kicked him and a third wrestled with him. During the struggle, defendant "stepped in and tried to help" Waire by pushing and kicking at Jones's friends.  The two men fled but quickly returned, seeking to recover defendant's cell phone, which had evidently fallen out of defendant's pocket during the struggle.
>
> During the subsequent criminal investigation, law enforcement recovered a bullet casing wrapped in a red bandana among defendant's belongings.  A ballistics expert testified that the fired cartridge case and the bullet obtained from Jones's autopsy were consistent.  Law enforcement was also able to identify one of the cell phones

> found at Jones's apartment as belonging to defendant.  At trial, the prosecutor also presented video testimonial evidence that defendant provided at co-defendant Waire's preliminary examination in which he admitted to his involvement in the armed robbery and implicated Waire as the shooter.  During closing arguments, defense counsel conceded that defendant participated in the armed robbery and focused on the evidence supporting the felony-murder charge, emphasizing that defendant did not intend to cause Jones's death.
>
> [2] On May 22, 2018, a different jury found Waire guilty of committing one count of felony-murder, three counts of felony firearm, one count of armed robbery, and one count of felon-in-possession arising out of this same incident.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.40.)  "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted).

Petitioner, with the assistance of counsel, directly appealed his convictions and sentences to the Michigan Court of Appeals.  He argued that there was insufficient evidence to support his convictions and that the sentence imposed for armed robbery violated Michigan's sentencing statutes and constituted cruel and unusual punishment.  By opinion issued November 26, 2019, the Michigan Court of Appeals denied relief.

Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court.  His application was supplemented by counsel.  *See* https://courts.michigan.gov/opinions_orders/case_search/pages/default.aspx?SearchType=1&CaseNumber=344784&CourtType_CaseNumber=2 (visited August 6, 2020).  By order entered April 29, 2020, the Michigan Supreme Court denied leave to appeal.

On July 29, 2020, Petitioner filed his habeas corpus petition raising one ground for relief, as follows: "Petitioner's sentence constitute[s] cruel and unusual punishment under the Eighth Amendment of the U.S. Constitution."  (Pet., ECF No. 1, PageID.5.)

**II.     AEDPA standard**

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court

adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

**III. Discussion**

In the materials submitted in support of the petition, Petitioner presents several arguments under the umbrella-claim that his sentence violates the Eighth Amendment.  He argues

5

not only that his sentence is cruel and unusual, but also that it is unreasonable, disproportionate, and that it is improperly based on criminal conduct of which he was acquitted. These arguments are focused principally on the trial court's application of the state sentencing guidelines.

The Michigan Court of Appeals described the trial court's application of the sentencing guidelines as follows:

> The trial court assessed defendant's prior record variable (PRV) score at zero, putting him at PRV level A, and his OV score at 155, putting him at OV level VI, and resulting in a recommended minimum sentencing guidelines range of 108 to 180 months. The court sentenced defendant to 17½ years to 40 years' imprisonment, a two-and-a-half year upward departure from the recommended minimum sentencing range. The record shows that the trial court acknowledged defendant's family and community support, his cooperation with the pre-sentence investigator according to the Michigan Department of Corrections, his lack of criminal history, and the crucial information he provided in the early stages of the investigation of Jones's murder. Nevertheless, the trial court also pointed to circumstances surrounding commission of the armed robbery the court believed the guidelines inadequately reflected. Specifically, the court considered that defendant agreed with Waire to seek someone to rob, identified Jones as a target, took multiple steps to conceal his identity, and knew that Waire possessed a handgun. In addition, defendant did nothing during the course of the robbery to stop or deter Waire from pointing a gun inches away from Jones's face and shooting him, he did nothing to render aid to Jones after the shooting, and instead, he fought off the other robbery victims in an effort to free Waire. The court further noted that defendant had not expressed meaningful remorse, he had a prior relationship with the subject of his robbery because he knew Jones as a fellow college student, and he initiated the series of events that targeted Jones and led to the robbery of the five teenagers in the apartment. Because defendant's total offense variable (OV) score exceeded the maximum score in defendant's scoring grid by 55 points, the court concluded that the grid cell did not adequately "capture all that is connected with the instant matter," and sentenced him accordingly.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.41-42.)

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). Petitioner's habeas issue, as he has stated it, raises primarily state law claims. Petitioner relies on the authority of *People v. Milbourn*, 461 N.W.2d, 1 (Mich. 1990), to support a claim that his sentence is disproportionate.

6

He relies on *People v. Lockridge*, 870 N.W.2d 502 (2015), and *People v. Steanhouse*, 902 N.W.2d 327 (2017), to support a claim that his sentence—or, more accurately, the trial court's departure from the sentencing guideline range—is unreasonable.

In *Milbourn*, the Michigan Supreme Court held that a sentence must be proportional, a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9-10; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). In *Lockridge*, the Michigan Supreme Court altered the legislative scheme to comply with constitutional requirements, making it advisory rather than mandatory. The court did not leave the exercise of judicial discretion in sentencing without any boundary: where the sentencing court strays outside the applicable sentencing guidelines range, the court held that the resulting sentence must be reasonable. *Lockridge*, 870 N.W.2d at 521. Two years later, the Michigan Supreme Court indicated that "reasonableness" as contemplated by *Lockridge* is determined by inquiring whether the sentence was proportional under *Milbourn*. *People v. Steanhouse*, 902 N.W.2d 327, 329 (Mich. 2017).

It is plain that *Milbourn* was decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). *Milbourn*'s notions of proportionality raise only state law issues. The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v.*

*Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Thus, any claim based on *Milbourn* proportionality requirements or *Lockridge*/*Steanhouse* reasonableness requirements is not cognizable in a habeas corpus action.

Even though Petitioner's claims regarding reasonableness and proportionality are not cognizable, that does not mean that Petitioner's sentences are immune from habeas corpus review. Petitioner is entitled to the protections of the Eighth Amendment: the punishment imposed cannot be cruel and unusual. But, the Eighth Amendment does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentences fall within the maximum penalties under state law. Petitioner's sentences, therefore, do not present the extraordinary case that runs afoul of the Eighth Amendment's ban of cruel and unusual punishment.

Petitioner also enjoys the protections of due process during sentencing. A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, Petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988); *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner complains that the trial court's departure depended on the fact that one of the victims died—a consequence of the robbery for which the jury found Petitioner was not criminally liable. But, the Michigan Court of Appeals specifically found that the trial judge did not rely on that fact when imposing sentence:

> We also reject defendant's corollary argument that the trial court may have improperly sought to punish defendant for felony-murder despite the jury's acquittal on that charge.[3] Although decided after defendant submitted his brief, this line of argument necessarily implicates our Supreme Court's recent decision in *People v Beck*, __ Mich __; __ NW2d __ (2019) (Docket No. 152934). In Beck, our Supreme Court held that a trial court violates a defendant's right to due process when it sentences him or her while relying on acquitted conduct. See *Beck*, __ Mich at ___; slip op at 22. Because the trial court explicitly stated that it was not relying on acquitted conduct[4] and set forth an independent justification for the upward departure, we do not believe that the trial court sought in any way to subvert the jury's felony-murder acquittal.[5]

---

[3] Defendant contends in his brief that "it's almost as if the trial court felt that [defendant] should have been convicted as an aider and abettor to Mr. Jones' murder and that [defendant] got off light."

[4] The trial court stated in relevant part:

> In calculating a just and reasonable sentence, I am also mindful that although charged as an accomplice to murder, a unanimous twelve member jury found [defendant] not guilty of aiding and abetting a murder.

9

> The government had the opportunity to convince a jury that [defendant] should be held responsible for murder, but failed in that effort. [Defendant] stands before me to be sentenced after having been convicted of armed robbery, not murder.

[5] To the extent defendant now asserts that OV 3 was misscored—to which his counsel did not object at sentencing—this was a multiple offender case and 100 points must be assessed, as Waire was assessed 100 points for OV 3 associated with his armed robbery conviction. MCL 777.33(2)(a) ("In multiple offender cases, if 1 offender is assessed points for death or physical injury, all offenders must be assessed the same number of points") and MCL 777.33(2)(b) ("Score 100 points if death results from the commission of a crime and homicide is not the sentencing offense").

(Mich. Ct. App. Op., ECF No. 1-1, 42-43.) In short, to the extent that Petitioner's responsibility for, or lack of remorse for, the death of one of the robbery victims is deemed to be the "materially false information," Petitioner cannot show that the trial court relied upon it. He therefore fails to demonstrate that his sentence violated due process. *Tucker*, 404 U.S. at 447; *United States v. Lanning*, 633 F.3d 469, 477 (6th Cir. 2011) (rejecting due process claim where the petitioner failed to point to specific inaccurate information relied upon by the court).

Accordingly, the state-court's rejection of Petitioner's sentencing claims were not based on an unreasonable determination of the facts and were neither contrary to nor an unreasonable application of established Supreme Court precedent. 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas relief.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467.

Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:   August 13, 2020                              /s/ Paul L. Maloney
                                                                      Paul L. Maloney
                                                                       United States District Judge